788 A.2d 867 (2002)
347 N.J. Super. 11
Richard FREEMAN and John Jones, Plaintiffs-Appellants,
v.
STATE of New Jersey; New Jersey State Police; Colonel Carl A. Williams, Superintendent of the New Jersey State Police, individually and in his official capacity; Peter Verniero, Attorney General, individually and in his official capacity; Trooper Antonio Casais, individually and in his official capacity; Trooper Osiliva, first name unknown, individually and in his official *868 capacity; Trooper Hemely, first name unknown, individually and in his official capacity; John I through V, fictitious names, individually and in their official capacities, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 2001.
Decided January 23, 2002.
*871 Charles M. Crocco, Neptune, argued the cause for appellants (Nelson & Fromer, attorneys; Mr. Crocco, on the brief).
Gregory J. Bevelock, Teaneck, argued the cause for respondent State of New Jersey, New Jersey State Police and Peter Verniero (DeCotiis, Fitzpatrick, Gluck & Cole, attorneys; Michael R. Cole of counsel; Mr. Bevelock, on the brief).
Robert J. Aste, Livingston, argued the cause for respondents Troopers Antonio Casais, Osiliva, and Hemely (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Leonard C. Leicht, on the brief).
Before Judges STERN, COLLESTER and LINTNER. *869
*870 The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiffs, Richard Freeman and John Jones, appeal from a July 3, 2001 Law
Division order dismissing, with prejudice, plaintiffs' complaint against defendants State of New Jersey; Justice Peter Verniero, in his capacity as Attorney General; Trooper Antonio Casais; Trooper Osiliva; and Trooper Hemely.[1] Judge Uhrmacher found that plaintiffs' complaint, which alleged deprivation of various rights under the United States and New Jersey Constitutions, was barred by the running of the statute of limitations. We agree and affirm.
We combine the procedural history and relevant facts. On June 27, 1996, plaintiffs were stopped on the northern end of the New Jersey Turnpike by Trooper Casais. The specific facts concerning the stop and the ensuing search of the vehicle are set forth at length in our opinion in State v. Jones, 326 N.J.Super. 234, 237-39, 741 A.2d 104 (App.Div.1999), decided on December 3, 1999. They are as follows:
On June 27, 1996 at 5:42 p.m., during rush hour, Jones was operating Freeman's Mercury Sable on the northern end of the New Jersey Turnpike in the southbound inside lane. Freeman was seated in the right front passenger seat and Michael Gonzalez was seated in the rear. At the time, Trooper Antonio Casais was traveling behind the defendants when he observed defendants' vehicle make a lane change from the left lane to the middle lane without displaying a turn signal.
Having observed no signal, Trooper Casais activated his overhead lights in order to effectuate a motor vehicle stop. According to Trooper Casais, the driver pulled the car over to the shoulder approximately fifteen seconds after the trooper had activated his overhead *872 lights, having traveled approximately two-tenths of a mile. Trooper Casais then alerted headquarters of the stop, after which he approached defendants' vehicle on the driver's side. He asked Jones for his credentials. After producing his license, Jones activated his directional signal in response to the trooper's request. Though the blinker gave an audible signal, the dashboard light was not working. At Trooper Casais's direction, both he and Jones went to the back of the vehicle where both observed that the blinker light was working.
After speaking with Jones, at the rear of the vehicle, Trooper Casais detected an odor of alcohol on Jones's breath, as a result of which he asked Jones if he had been drinking. Jones responded "I'm not going to lie to you because I had a bottle of Heineken." At this point in time, backup Troopers Osiliva and Hemely arrived. After conducting a pat-down search of Jones which revealed no weapons, Trooper Casais directed Freeman and Gonzalez to exit the vehicle. Both passengers were searched for weapons, none were found. While the three occupants of the vehicle were waiting behind the Mercury with the two backup troopers, Trooper Casais commenced a search for open containers of alcohol by going to the driver's side of the vehicle and looking in the immediate area of the driver's seat for alcohol containers. Underneath the driver's seat he found a plain plastic bag containing a white substance which he believed to be cocaine. The driver and both passengers were placed under arrest and given their Miranda warnings.
Trooper Casais returned to the car to conduct a further search. On the right front floor in front of the passenger seat he found a black plastic bag containing a zip-lock bag with a larger quantity of cocaine. Underneath the front arm rest a brown bag containing 500 zip lock bags was found. The subsequent tests performed by the State Police laboratory revealed that the bag underneath the driver's seat contained .48 ounces of cocaine while the bag on the front passenger floor contained 5.82 ounces of cocaine.

[Id. at 237-39, 741 A.2d 104.]
Plaintiffs were arrested and subsequently indicted by a Bergen County Grand Jury on October 10, 1996. Their motion to suppress the evidence was denied by the trial judge on October 8, 1997. The trial judge found that the smell of alcohol on Jones's breath, combined with his admission of consumption of beer, his apparent nervousness, his failure to use the turn signal and what Trooper Casais believed was an unusually long time to stop the vehicle, established probable cause. Following the motion to suppress, plaintiffs were tried and convicted by a jury of first-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and b(1), and third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1), and sentenced to custodial terms.
On May 4, 1998, plaintiffs appealed their convictions, contending that Trooper Casais lacked probable cause to search the vehicle and that the warrantless search of the vehicle and seizure of evidence represented a violation of their Fourth Amendment rights under the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. Additionally, Freeman contended for the first time on appeal, in a pro se supplemental brief filed on September 3, 1999,[2] that he was a victim *873 of a racially motivated profile stop. Jones, supra, 326 N.J.Super. at 237, n. 2, 741 A.2d 104. Jones also contended that the stop was not justified, arguing that the evidence presented at the suppression hearing was insufficient to show that Trooper Casais had a valid basis to stop the vehicle.
We declined to hear Freeman's claim that the stop was a result of selective enforcement, noting that it was improperly before us because it had not been raised by motion before the trial judge and there was no record to support the claim. Id. (citing State v. Marain, 322 N.J.Super. 444, 447, 731 A.2d 109 (App.Div.1999)). We validated the stop but reversed the judgment of conviction and remanded for further proceedings concluding that, under the circumstances, the State failed to establish that there was probable cause to search the vehicle and, therefore, the evidence seized should have been suppressed by the trial judge as violative of the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. We were advised at oral argument on this appeal that the prosecutor dismissed the indictment because the suppressed evidence of controlled dangerous substance and drug paraphernalia was critical to the State's case and without it the State could not proceed.
On December 8, 2000, plaintiffs filed their complaint against defendants asserting that (1) the search and seizure constituted a deprivation of their rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the New Jersey and United States Constitutions, pursuant to 42 U.S.C. § 1983; (2) the search and seizure was conducted pursuant to a State policy of "racial profiling" in violation of unspecified portions of the New Jersey Constitution; (3) the search and seizure was a conspiracy to violate Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1985; (4) the search and seizure constituted common-law negligence; (5) the failure of the named State officials to prevent this conspiracy was in violation of 42 U.S.C. § 1986; (6) the named State officials' failure to prevent racial profiling violated plaintiffs' rights under the New Jersey and United States Constitutions; (7) the named State officials' failure to prevent racial profiling constituted common-law negligence; and (8) the search and seizure constituted a deprivation of plaintiffs' rights under the New Jersey and United States Constitutions, generally.
Argument on defendants' motion was heard on June 8, 2001. On July 3, 2001, Judge Uhrmacher rendered her oral decision finding that the two-year statute of limitations applied to all plaintiffs' causes of action except the § 1986 claim, to which a one-year statute of limitations applied. She also found that the statute of limitations was not equitably tolled and the date of the stop, June 27, 1996, was the accrual date for plaintiffs' causes of action, which were accordingly barred by the running of the applicable one or two-year limitation period. As an aside, she noted that even though the complaint against Justice Verniero in his capacity as Attorney General was barred by a running of the statute of limitations, plaintiffs failed to state a cause of action because he was not serving as Attorney General at the time the search took place. Finally, Judge Uhrmacher found that plaintiffs' claim did not accrue at the time we reversed and remanded their conviction because they had not alleged the tort of malicious prosecution in furtherance of their constitutionally based § 1983 claims and that such a claim, even if alleged, would not lie given the factual circumstances presented.
*874 Plaintiffs concede that Judge Uhrmacher properly delineated the applicable statutes of limitation but erred, contending (1) the statute of limitations did not begin to run on their § 1983 claims until they were released from prison following our reversal of the trial judge's order denying suppression of the evidence; (2) the statute of limitation on its asserted § 1985 conspiracy to commit racial discrimination claims was tolled by application of either the discovery rule or the principle of equitable tolling and (3) their claims against Justice Peter Verniero were improperly dismissed based upon the fact that he was not serving as Attorney General at the time of the stop. Because we hold that Judge Uhrmacher properly applied the statute of limitations, we need not decide whether Justice Verniero's status at the time of the stop nullified plaintiffs' cause of action. At oral argument, plaintiffs' counsel conceded that if plaintiffs' claims were barred by the statutes of limitation, the issue raised by them respecting the propriety of the dismissal in favor of Justice Verniero would be rendered moot. Therefore, we consider first the issues raised respecting the statute of limitations.
Plaintiffs do not contest that their actions, brought under the Civil Rights Act, 42 U.S.C. § 1983 and 1985, which are essentially actions in tort based upon either infringement of liberty and property rights (§ 1983) or conspiracy on the part of government to deprive a person or class of persons of equal protection of the law (§ 1985), are governed by our two-year statute of limitations applicable to personal injury torts, N.J.S.A. 2A:14-2. See Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 24 (3d Cir.1989). A § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Actions grounded on violation of § 1983 based upon police action toward criminal suspects, such as search and seizure, arrest and interrogation, are "presumed to have accrued when the action actually occurs." Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir.1991).
Where, for example, a plaintiff claimed that he was deprived a fair trial as a result of alleged systematic racial discrimination in the selection of a jury, the cause of action for statute of limitation purposes was deemed to have accrued at the time the trial took place. Ibid. It is not necessary that a claimant be aware of all the evidence that will be ultimately relied upon before the statute begins to run. Baker v. Bd. of Regents, 991 F.2d 628, 632 (10th Cir.1993) (citing Blumberg v. HCA Management Co., 848 F.2d 642, 645 (5th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989)). Where a claimant is aware that harm has been done him, ignorance of his legal rights does not toll the statute of limitations. A claimant "armed with the facts about the harm done to him can protect himself by seeking advice." United States v. Kubrick, 444 U.S. 111, 123, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979).
Applying these general principles, we are inevitably drawn to conclude that, under the circumstance here, plaintiffs were aware of the harm done to them the moment the vehicle they occupied was searched without probable cause. See Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998). Thus, the statute of limitations began to run on plaintiffs' § 1983 claims on June 27, 1996. Even if it could be said that plaintiffs' § 1983 claims arising from the stop and ensuing search did not accrue until they became aware of their legal rights, which it does not, their motion to suppress *875 was filed and heard on October 8, 1997, more than two years prior to the filing of the civil complaint which is the subject matter of this appeal.
Plaintiffs contend, however, that their cause of action under § 1983 for alleged discriminatory practices (racial profiling), which led to the deprivation of their liberty and property rights, sounds in malicious prosecution and therefore did not accrue until their convictions were overturned. We agree with Judge Uhrmacher that a liberal reading of plaintiffs' complaint does not reveal allegations of malicious prosecution. However, we assume, given the early stages of the litigation and our rules, which permit the liberal granting of amendments to pleadings, Kernan v. One Washington Park, 154 N.J. 437, 456-57, 713 A.2d 411 (1998); R. 4:9-1, that Judge Uhrmacher correctly looked beyond the pleadings to decide the propriety of plaintiffs' assertion that a cause of action for malicious prosecution would lie under the factual circumstances here.
Plaintiffs assert that Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), is controlling and their cause of action based on malicious prosecution did not accrue until our decision, and is viable under § 1983. We disagree with plaintiffs' analysis.
Heck was convicted in Indiana State court of voluntary manslaughter for killing his wife. While the appeal of his conviction was pending, he filed a civil compliant alleging violation of § 1983, asserting that the State's unreasonable and arbitrary investigation led to his arrest and that the State destroyed evidence which would have exculpated him. In a five-to-four decision, Justice Scalia, writing for the majority, affirmed the dismissal of Heck's complaint, without prejudice, because a judgment in favor of Heck on his civil suit would "necessarily imply the invalidity of the conviction." Id. at 487, 114 S.Ct. 2364. He concluded that, in order to avoid parallel litigation which would be tantamount to a "collateral attack on a conviction through the vehicle of a civil suit," the plaintiff's claim could not proceed unless the plaintiff could "demonstrate that the conviction or sentence has already been invalidated." Id. at 484, 486, 114 S.Ct. 2364. Analogizing a claim for unlawful conviction with one for malicious prosecution, Justice Scalia observed that a defendant would not be permitted to maintain a § 1983 claim sounding in malicious prosecution on a parallel track pending disposition of the underlying criminal action because prosecution of the civil claim is dependent, in part, on proof that the criminal proceeding was terminated in favor of the accused. Id. at 484, 114 S.Ct. 2364.
The Supreme Court distinguished claims for false arrest and false imprisonment, which, unlike malicious prosecution, limit damages to the time of confinement up until the time process is issued or arraignment takes place. Id. at 484, 114 S.Ct. 2364; see also Hector v. Watt, 235 F.3d 154, 156 (3d Cir.2001) (stating that claims for false arrest do not permit damages incurred after an indictment). Damages for malicious prosecution continue to accrue during the time of imprisonment until the criminal action is terminated in favor of the accused. Heck, supra, 512 U.S. at 484, 114 S.Ct. 2364.
The factual circumstances and the holding in Townes v. City of New York, 176 F.3d 138 (2d. Cir.), cert. denied, 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 311 (1999), are illustrative of the distinction between § 1983 claims that are limited to damages resulting from invalid stops or unreasonable searches, and those which are predicated on damages resulting from *876 malicious prosecution.[3] Townes was a passenger in a taxicab when it was stopped by the New York City police for no apparent reason. A search of the cab at the scene yielded two handguns, which Townes had hidden under his seat, while a later search of Townes' person at the precinct turned up cocaine. Townes' motion to suppress the handgun and cocaine evidence was denied by the trial judge. He successfully appealed the denial of his motion to suppress after entering a plea of guilty and being imprisoned for two years. Instead of limiting his damage claim to those associated with the seizure of contraband, he sought damages for the harm he suffered as a result of his conviction and incarceration. Noting that the cause of action was not predicated on malicious prosecution, the Second Circuit repeated the following principle:
The state trial court's exercise of independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability for the plaintiff's conviction and incarceration.
It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment. At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment.

[Id. at 147 (citations omitted).]
The Second Circuit also observed that the "fruits of the poisonous tree" doctrine, which excludes evidence in a criminal trial, is not applicable in a civil case to link an unreasonable search or seizure to the conviction and subsequent sentence. Id. at 145. Correlating the two principles, the Second Circuit concluded:
The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is not evil at all.
No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics, reaps the financial benefit he seeks.

[Id. at 148.]
Thus, damages for a conviction and subsequent incarceration, which is later reversed because illegally possessed contraband was obtained in a constitutionally invalid stop or search, are not recoverable under § 1983, absent a cause of action predicated on malicious prosecution.
We, therefore, must examine the facts in light of the elements required to establish a cause of action for malicious prosecution. If plaintiffs' allegations stated a cause of action for malicious prosecution, then their claim would not have accrued until their conviction was overturned by our decision of December 1999, and the two-year limitation period would not have run. Judge Uhrmacher focused on two essential elements that she concluded were absent, namely (1) the lack of probable cause for proceeding with the criminal action and (2) termination of the criminal proceeding in favor of the accused. See Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 *877 (1975). Probable cause is established conclusively by a conviction, even if reversed on appeal, so long as the conviction was not obtained by "fraud, perjury or other corrupt means." Id. at 263-64, 337 A.2d 365 (citing 3 Restatement of Torts, § 667(1) at 421 (1938)). Furthermore, as we have seen, the improper suppression of evidence in a criminal proceeding may not be used to establish lack of probable cause in a subsequent civil action. Townes, supra, 176 F.3d 138; see also Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 2019, 141 L.Ed.2d 344 (1998).
Plaintiffs were found with more than six ounces of cocaine in their possession, as well as 500 zip-lock bags. Although later suppressed, the evidence of illegally possessed contraband establishes that probable cause existed at the time the criminal prosecution proceeded. Here, plaintiffs have not alleged that the cocaine and drug paraphernalia were either planted or fraudulently produced by the State. Unlike the allegation in Heck, where the State was alleged to have disposed of exculpatory evidence, there is no assertion here that the conviction was the product of corrupt prosecution impacting guilt or innocence. Our reversal of defendant's suppression motion did not "invalidate" their conviction as that term is applied by Justice Scalia in Heck. To the contrary, like the circumstances in Townes, plaintiffs' claims are predicated on false imprisonment or arrest as the result of a constitutional violative stop and search, not, as alleged, the tort of malicious prosecution, because they did in fact possess the illegal drugs that formed the basis for the jury's conviction. We agree with Judge Uhrmacher's finding that the strength of this evidence alone negated any argument that probable cause was lacking.
Closely related to the element requiring the nonexistence of probable cause is the element mandating termination of the criminal proceedings in favor of plaintiffs. The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were charged. Rubin v. Nowak, 248 N.J.Super. 80, 83, 590 A.2d 249 (App.Div. 1991). "Even if the plaintiff in malicious prosecution can show that the defendant acted maliciously and without probable cause in instituting a prosecution ... the defendant [can] escape liability by showing... that the plaintiff was in fact guilty of the offense with which he was charged." Hector, supra, 235 F.3d at 156 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts 885 (5th ed.1984)).
In Rubin, we looked to the Restatement (Second) of Torts for guidance. Comment "a" to § 660 of the Restatement notes that "[p]roceedings are `terminated in favor of the accused,' as that phrase is used ... throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused." Restatement (Second) of Torts § 660, comment "a" (2001). The prosecution in Rubin was administratively dismissed without presentation to the grand jury. We found that there was "nothing in the record to suggest that the prosecutor acted as he did for any reason other than a careful determination of plaintiffs' innocence." Rubin, supra, 248 N.J.Super. at 84, 590 A.2d 249. In Fleming v. United Parcel Service, 273 N.J.Super. 526, 642 A.2d 1029 (App.Div. 1994), the Law Division, on a trial de novo, entered an acquittal based upon the denial of the constitutional right to a speedy trial after the plaintiff was convicted in municipal court. We held that the disposition met the criteria of a favorable termination, as an acquittal by definition "is always *878 considered a favorable termination." Id. at 530, 642 A.2d 1029.
Unlike Rubin and Fleming, our reversal of plaintiffs' conviction was predicated on the trial court's failure to suppress evidence, not upon a determination that plaintiffs were innocent of the criminal behavior charged or entitled to an acquittal. The ultimate decision by the prosecutor to dismiss the charges against plaintiffs was based upon the inability to proceed without the incriminating evidence. Similar to what we have previously said concerning the existence of probable cause, our reversal of the conviction did not impugn the validity of the jury's determination of guilt. There is no evidence that plaintiffs' prosecution, trial or ultimate conviction came about as the result of fraud, corruption, perjury or other untoward conduct that would negate the jury verdict as invalid or indicate that plaintiffs were otherwise innocent of the offenses for which they were prosecuted. On the record before us, plaintiffs' reliance on the holding in Heck, for the proposition that the statute of limitations on their § 1983 claims did not accrue until the date we reversed their criminal conviction, is misplaced because their factual allegations failed to state the elements required to maintain a cause of action for malicious prosecution.
Plaintiffs argue that the discovery rule and the doctrine of equitable tolling save their claims of conspiracy to violate their civil rights under § 1985. We disagree. Like the claims predicated on violation of § 1983, the statute of limitations for § 1985 civil conspiracy to violate civil rights runs from the time of the occurrence of the overt act that causes harm. Hoffman v. Halden, 268 F.2d 280, 302 (9th Cir.1959), overruled on other grounds, Cohen v. Norris, 300 F.2d 24 (9th Cir.1962). See also Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir.1991) (holding that the accrual of a § 1983 claim runs when plaintiff knows or has reason to know of the injury that is the basis of the action). Relying on Genty, plaintiffs contend that they "did not have reason to know how far reaching the conspiracy to racially profile African-Americans was, prior to the New Jersey Senate hearings of November 2000." They urge that under the discovery rule their cause of action for conspiracy to violate their civil rights accrued one week prior to the filing of their complaint.
Similar to the extent of the limitation period, related questions concerning tolling are governed by State law unless inconsistent with federal law or with the policy which federal law seeks to implement. Wilson v. Garcia, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). The discovery rule provides that "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272, 300 A.2d 563 (1973). Plaintiffs must show that they could not, through reasonable diligence and intelligence, have discovered a basis for their claim within the applicable limitation period. Lapka v. Porter Hayden Co., 162 N.J. 545, 556, 745 A.2d 525 (2000). Plaintiffs do not maintain that they were entirely unaware of the application of selective enforcement to their case, but merely assert that they were not aware of "how far reaching" it had become. Evidence of the breadth of the alleged conspiracy has no bearing on plaintiffs' knowledge of their injury. That the "conspiracy" went further than originally believed is of no consequence, since it is not necessary that claimants know all of the *879 evidence upon which they will ultimately rely. Baker, supra, 991 F.2d at 632.
Even though a claimant is unaware of exactly who was responsible for an injury, the discovery rule is inapplicable so long as there is awareness of the injury itself. Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 275, 693 A.2d 1248 (App.Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998). Fictitious pleading, R. 4:26-4, is the correct way for litigants to preserve a cause of action where the nature of claim is known and the tortfeasor's identity is not. Ibid.
The existence of racial profiling was not "spawned by the release" in April 1999 of the Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling, nor did it first come to light as a result of the subsequent Senate hearings. State v. Clark, 345 N.J.Super. 349, 356, 785 A.2d 59 (App.Div.2001). Profiling was first raised in State v. Kennedy, 247 N.J.Super. 21, 588 A.2d 834 (App.Div. 1991), in which defendants' vehicle was stopped by State Troopers for speeding on Interstate 80 on October 14, 1987. Accompanying defendants' motion in Kennedy was a study prepared by the Warren County Public Defender's Office, which disclosed that out of forty-three cases involving motor vehicle stops on Route 80 in a three-year period, seventy percent related to African American occupants, seven percent to Hispanics and twenty-three percent to Caucasians. The defendants contended that the figures were disproportionate to the Warren County Public Defender's caseload, which comprised seventy-six percent Caucasians and seventeen percent African-Americans. They also contended that an affidavit filed by a staff member of the American Civil Liberties Union pointed out that numerous complaints from minority citizens had been received claiming that they had been stopped for "minor traffic violations" and subjected to intrusive searches. Id. at 27, 588 A.2d 834. See also State v. Smith, 306 N.J.Super. 370, 703 A.2d 954 (App.Div. 1997) (concerning a January 14, 1994 stop on Interstate 95 by a State Trooper, with supporting statistical data that, for a period spanning July 11, 1991 to August 24, 1994, out of forty-eight defendants charged by the investigating trooper, twenty-four were African Americans and only four were Caucasians); State v. Soto, 324 N.J.Super. 66, 734 A.2d 350 (Law Div. 1996) (approved for publication after withdrawal and dismissal of the State's appeal on April 22, 1999) (in which seventeen African American defendants successfully moved to suppress evidence from a traffic stop based upon unrebutted statistical evidence of disproportionate traffic stops establishing a de facto policy of targeting blacks on the New Jersey Turnpike).
Here, the overt act and injury to plaintiffs arising out of any alleged conspiracy on the part of the troopers to violate plaintiffs' constitutional rights occurred at the time of the stop. The discovery rule does not apply to toll the two-year statute of limitations. We come to the same conclusion respecting the application of the doctrine of equitable tolling. There is a significant distinction between doctrines of equitable tolling and the discovery rule. Villalobos v. Fava, 342 N.J.Super. 38, 45, 775 A.2d 700 (App.Div.), certif. denied, 170 N.J. 210, 785 A.2d 438 (2001). While the discovery rule postpones the accrual of a cause of action, equitable tolling acknowledges the accrual of the action but tolls the statute of limitations because the plaintiff lacked vital information that was withheld by a defendant. Id. at 45-46, 775 A.2d 700.
Equitable tolling may be applied where "the complainant has been induced or tricked by his adversary's misconduct *880 into allowing the filing deadline to pass." Dunn, supra, 301 N.J.Super. at 280, 693 A.2d 1248 (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435, 444 (1990)). A statute of limitations is not permitted to be used "as a sword" by an adversary whose misconduct prevents a claimant from filing within the limitation period. Ibid. Another circumstance in which equitable tolling has been held to apply is where a plaintiff has "in some extraordinary way" been prevented from asserting his rights. U.S. v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998) (citing Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir. 1983)). Finally, equitable tolling may be appropriate where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. Id. at 179; see also Dunn, supra, 301 N.J.Super. at 280, 693 A.2d 1248. However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice. Midgley, supra, 142 F.3d at 179.
The plaintiffs assert that, since the pervasiveness of racial profiling has only recently been made public, those defendants not directly involved with the search and seizure purposefully concealed their culpability and, as such, misled the plaintiffs. However, they do not argue that they were unaware of who caused the injury for which they seek relief, only that certain individuals were unknown to them. Plaintiffs have a duty to diligently pursue their claims. Equitable tolling, which "affords relief from inflexible, harsh or unfair application of a statute of limitations," does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims. Villalobos, supra, 342 N.J.Super. at 52, 775 A.2d 700. There is no allegation here that plaintiffs were precluded from compiling the same type of statistical data that formed the basis for the selective enforcement claims in Kennedy, Smith or Soto. Contrary to plaintiffs' protestations, it is their inaction which formed the basis for their failure to file within the limitation period. There is simply no factual allegation which bespeaks the kind of trickery or misconduct that would justify the application of equitable tolling. Plaintiffs were aware of their injury and the principal actors involved at the time of the stop, as evidenced by the filing of their motions to suppress heard on October 8, 1997.
Although plaintiffs also assert that they were "in some extraordinary way" prevented from filing their complaint by virtue of the fact that they were incarcerated, they do not offer any explanation as to how or who prevented them from exercising their right to file suit. We find their claim in this respect to be wholly without merit. Likewise, plaintiffs' argument that the Criminal Division trial judge who denied their suppression motion "advised [them] that the stop and subsequent search of their vehicle were constitutionally valid, thus advising them they had no cause of action," is not supported by any reference to the record and is equally without merit. We will not consider mere conclusory statements by the brief writer. Miller v. Reis, 189 N.J.Super. 437, 441, 460 A.2d 210 (App.Div.1983).
Accordingly, we conclude that plaintiffs' asserted Civil Rights Act claims are barred by applicable one and two-year statutes of limitations. Because the two-year limitation period is equally applicable to plaintiffs' State law claims, we need not address them further, nor comment on the *881 applicability of the notice provisions of the Tort Claims Act, N.J.S.A. 59:8-8 to-9.
Affirmed.
NOTES
[1] Colonel Carl A. Williams, former Superintendent of the New Jersey State Police, was named in the complaint but never served, and Troopers Osiliva's and Hemely's first names are not provided anywhere in the record.
[2] This information was obtained from Appellate Division records as it was not made part of the appendix filed by the parties.
[3] For the purpose of our analysis, we make no distinction between a motor vehicle stop based upon race or any other invidious classification, a violation of the Fourteenth Amendment to the United States Constitution and the protection afforded by Article I, paragraphs 1 and 5 of the New Jersey Constitution, and a stop or search which lacks the required probable cause, a violation of the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution.