**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4036-23

CHRISTOPHER CHENEL,

    Plaintiff-Appellant,

v.

ALLSTATE INSURANCE
COMPANY,

    Defendant-Respondent.

_____

         Argued September 16, 2025 – Decided October 9, 2025

         Before Judges Rose and DeAlmeida.

         On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2971-23.

         Suzanne Saia argued the cause for appellant (Goldstein & Handwerker, LLP, attorneys; Steven Todd Goldstein, on the briefs).

         Thomas R. Lloyd argued the cause for respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Thomas R. Lloyd, on the brief).

PER CURIAM

Plaintiff Christopher Chenel appeals from the July 30, 2024 Law Division order granting summary judgment to defendant Allstate Insurance Company and dismissing his complaint for underinsured motorist (UIM) coverage with prejudice as untimely filed. We affirm.

I.

On June 16, 2017, plaintiff was injured in a motor vehicle accident while operating a vehicle covered by an insurance policy with defendant. Plaintiff's policy included UIM coverage.

On July 17, 2017, plaintiff notified defendant of the accident and asserted a claim under his policy for UIM coverage.

On June 14, 2018, plaintiff initiated an action against the driver of the other vehicle who he alleged was responsible for the accident. The alleged tortfeasor had a $100,000 liability policy.

On March 2, 2020, plaintiff sent defendant a letter seeking permission to settle his claims against the tortfeasor for $99,000. See Longworth v. Van Houten, 223 N.J. Super. 174, 176-83 (App. Div. 1988). Plaintiff also reiterated he had UIM coverage with defendant.[1]

_____

[1] The copy of plaintiff's letter in the record is dated both March 2, 2020, and March 11, 2020. Based on the date of defendant's response, it appears plaintiff's letter was sent on March 2, 2020.

On March 10, 2020, defendant rejected plaintiff's request to approve the settlement as premature and lacking in supporting documentation. Defendant requested additional information which plaintiff produced.

On April 21, 2021, defendant sent plaintiff's counsel an email authorizing plaintiff to accept the settlement. In addition, defendant requested submission of information supporting plaintiff's UIM claim.

The only communication between the parties after April 21, 2021, in the record, is an April 20, 2022 email from Laura Kacmarcik, a paralegal in the office of plaintiff's counsel, to a generic "claims" email address of defendant. Plaintiff's counsel, Steven Tood Goldstein, Esq., was copied on the email at what appears to be an office email address. The email stated: "Hello Carol. I am sorry for the confusion. I know we spoke before[.] I thought you had all this information in your file as it was sent to [your predecessor] before he retired. Thank you!" Attached to the email were plaintiff's interrogatory responses in the action against the tortfeasor, medical records, and an expert report.

Eight months later, on December 19, 2022, Kacmarcik died.

On June 16, 2023, approximately six months after Kacmarcik's death, the six-year statute of limitations on plaintiff's UIM claim against defendant expired. See Green v. Selective Ins. Co. of Am., 144 N.J. 344, 354 (1996)

A-4036-23

(holding the six-year statute of limitations in N.J.S.A. 2A:14-1(a) applies to UIM claims against insurance carriers and begins to run from the date of the accident).

On October 30, 2023, more than four months after expiration of the statute of limitations, plaintiff filed a complaint in the Law Division against defendant seeking UIM coverage for the June 16, 2017 accident. The complaint alleged that, after settlement of his claims against the tortfeasor, "[p]laintiff, through his attorney, attempted to negotiate a settlement of the [UIM] policy" with defendant, which proved futile. He alleged defendant's conduct constituted bad faith.[2]

In lieu of filing an answer, defendant moved pursuant to Rule 4:6-2(e) to dismiss the complaint as untimely filed. The court converted to motion to one

---

[2] Paragraph one of the complaint alleged plaintiff's policy at the time of the accident was issued by "[d]efendant" State Farm Insurance Company (State Farm). This appears to be a typographical error, as State Farm was the insurance carrier of the alleged tortfeasor and was not named as a defendant. Paragraph two of the complaint alleged that on September 23, 2016, plaintiff was operating a motor vehicle insured by "[d]efendant" Liberty Mutual Insurance (Liberty Mutual). This paragraph appears to be a typographical error. No event relevant to this matter occurred on September 23, 2016, and Liberty Mutual was not plaintiff's insurance carrier at the time of the accident or named as a defendant. Finally, paragraph seven of the complaint alleged plaintiff's UIM policy at the time of the accident had a limit of "Twenty-Five Thousand Dollars," but also identifies the policy limit numerically as "($250,000)." The record suggests the latter figure is correct.

for summary judgment. Plaintiff opposed the motion, arguing summary judgment was premature because a genuine issue of material fact existed regarding whether defendant was estopped from relying on the statute of limitations. According to plaintiff, after he settled with the tortfeasor, his counsel engaged in negotiations with defendant with respect to settling his UIM claim, and defendant may have lulled his counsel into allowing the statute of limitations to expire without filing a complaint. Plaintiff filed three certifications of counsel in opposition to defendant's motion.

In one certification, an attorney stated that "[b]etween May 25, 2021 and the filing of the [c]omplaint on October 30, 2023, [plaintiff] attempted to negotiate with [defendant] his [UIM] claim." The attorney continued, "[o]nce [plaintiff] realized his efforts at settling his [UIM] claim with [defendant] was (sic) futile, he filed the [c]omplaint against [defendant] on October 30, 2023." The certification identified no communications between plaintiff's counsel's office and a representative of defendant after the April 20, 2022 email from Kacmarcik. Nor did the certification specify the date on which plaintiff realized his efforts at settlement were futile or the basis on which he reached that conclusion.

5

In a second certification, Goldstein stated that plaintiff "delayed in filing suit against [defendant] due to his belief that [defendant] was acting in good faith to settle his [UIM] motorist claim." Goldstein also certified that "[b]etween May 25, 2021 and the filing of the [c]omplaint on October 30, 2023, [plaintiff] attempted to negotiate with [defendant] his [UIM] claim." Goldstein also identified no communications between plaintiff's counsel's office and a representative of defendant after the April 20, 2022 email from Kacmarcik.

Goldstein certified that "[u]nfortunately, the bulk of the negotiations [were] documented in a private email between a former Goldstein & Handwerker paralegal, Laura Kacmarcik, who suddenly passed away on December 19, 2022 (sic)." Goldstein did not identify the date of the private email. In addition, although Goldstein stated the email was "between" Kacmarcik and someone, he did not identify the recipient of the email.

Goldstein stated the April 20, 2022 email was sent by Kacmarcik from what he identified as her private email address. He certified that "[o]ur office has no access to recover emails from . . . Kacmarcik's email storage regarding this case." Goldstein's certification did not mention he was copied on the April 20, 2022 email at what appeared to be his work email address or allege that at

6

some point after April 20, 2022, Kacmarcik stopped copying him on her email communications with defendant about plaintiff's UIM claim.

In his second certification Goldstein argued defendant should be compelled to produce discovery with respect to the parties' negotiations regarding plaintiff's UIM claim "given it is in sole possession of the evidence related to the negotiations with . . . Kacmarcik." Goldstein did not certify a search of his firm's records, including the email account which was copied on the April 20, 2022 email, was undertaken for communications with defendant regarding plaintiff's UIM claim. In his certification, Goldstein appeared to concede that Kacmarcik, a paralegal, was conducting negotiations on behalf of his client without written input from or notification to any attorney at the firm.

On July 30, 2024, the motion court issued an oral decision granting defendant's motion. The court found

> plaintiff could have, at any point before the running of the statute of limitations, made good on the intention to seek a UIM claim by instituting that claim through the filing of a complaint. The fact that there were ongoing discussions in an attempt to resolve the matter is of no moment and does not act to toll the statute of limitations.

The court continued:

> It is undisputed that a paralegal . . . was negotiating with [defendant]. Ongoing negotiating

A-4036-23

does not necessarily mean that there will be a resulting settlement. When the paralegal suddenly passed away, the record is silent as to what transpired between the date of her passing . . . and the date of the running of the statute of limitations . . . .

While noting plaintiff's counsel's allegation the complaint was filed after plaintiff realized negotiations with defendant were futile, the court found, "[t]here [was] nothing in the motion record . . . to explain why this sense of futility was not reached before June [16, 2023,] or what would have prevented the filing of the complaint until after the statute of limitations had run."

The court noted "[t]he last communication, as per the motion record, between . . . Kacmarcik and [a defendant] representative appears to have occurred on April 20[,] 2022. The record is silent to anything after that date." The court continued:

> Then, of course, there was the untimely death of . . . Kacmarcik in December of 2022. There is not even a representation that she was working together with an attorney from the firm or that there was any attorney oversight.
>
> . . . .
>
> Other than providing [defendant] with documents, there is no indication in the motion record that any attorney was negotiating on behalf of plaintiff. There is no indication of a settlement demand or an offer to settle. At the very least, it appears once . . . Kacmarcik passed away, a full six months before the

statute ran, nothing of any substance was happening on the file.  Certainly, one can argue that the claim had become stale.

The court rejected plaintiff's argument defendant was equitably estopped from relying on the statute of limitations.  The court explained:

> [T]he law is very clear.  The statute of limitations may be equitably tolled only under very limited circumstances. . . . .
>
> Absent a showing of intentional inducement or trickery by a defendant, equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice. . . . .
>
> Here, plaintiff has not made any showing that equitable principles should bar the insurance company from raising a statute of limitations defense.  Plaintiff was aware of the parties involved in this matter and could have filed [a] complaint naming [defendant] as a party under the original litigation that was filed against the tortfeasor . . . .  Plaintiff[] knew or had reason to know that [he] had a cause of action against an identifiable defendant and voluntarily slept on [his] rights and permitted the customary period of limitations to expire.
>
> Plaintiff had just shy of two years from the date of settlement with the tortfeasor and the running of the statute of limitations to file his complaint.  Plaintiff in this case did not file his complaint until three (sic) months after the running of the statute of limitations.  No reason for this passage of three months has been shown or articulated in any way in the motion record.

9

> There is nothing in the motion record of what, in fact, was occurring during this period.

The court continued:

> There is no injustice to plaintiff when plaintiff had more than enough time to decide whether to file his complaint. Plaintiff had not alleged that he unjustly relied on communications from [defendant] in deciding not to file a complaint before the running of the statute. There is no allegation of intentional misconduct or trickery on the part of [defendant].

The court found that "plaintiff's argument too broadly interpret[ed] the concept of equitable tolling and effectively dispense[d] with the statute of limitations" and "[t]he inexplicable lack of any action on the file after [Kacmarcik's] death [was] devastating to . . . plaintiff's argument."

A July 30, 2024 order memorialized the motion court's decision. This appeal followed.

Plaintiff argues the motion court erred when it declined to equitably estop defendant from raising the statute of limitation because plaintiff: (1) provided timely notice of his UIM claim to defendant; (2) protected defendant's subrogation rights against the tortfeasor; and (3) was awaiting defendant's decision on his UIM claim when the statute of limitations expired. In addition, plaintiff argues defendant cannot demonstrate it would be harmed were the court to reinstate plaintiff's late-filed complaint and the motion court should have

allowed discovery of correspondence defendant had with plaintiff's "counsel," presumably Kacmarcik, regarding plaintiff's UIM claim.

II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan

A-4036-23

Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

It is well-established that the six-year statute of limitations established in N.J.S.A. 2A:14-1(a) applies to UIM claims against insurance carriers and begins to run from the date of the accident. Green, 144 N.J. at 354. "A claim must be commenced by filing a complaint and is not commenced by writing letters or negotiating with one's adversary." Mortara v. Cigna Prop. & Cas. Ins. Co., 356 N.J. Super. 1, 3-4 (App. Div. 2001).

"The primary purpose of the statute of limitations is to provide defendants a fair opportunity to defend and to prevent plaintiffs from litigating stale claims." W.V. Pangborne & Co. v. N.J. Dept. of Transp., 116 N.J. 543, 563 (1989) (citing Ochs v. Fed. Ins. Co., 90 N.J. 108, 112 (1982); O'Keeffe v. Snyder, 83 N.J. 478, 490-91 (1980)). "A statute of limitations may be equitably

tolled under very limited circumstances." Barron v. Gersten, 472 N.J. Super. 572, 577 (App. Div. 2022) (quoting F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012)).

"'Absent a showing of intentional inducement or trickery by a defendant [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice.'" Ibid. (quoting Binder v. Price Waterhouse & Co., LLP, 393 N.J. Super. 304, 313 (App. Div. 2007)). "Equitable tolling, which 'affords relief from inflexible, harsh or unfair application of a statute of limitations,' does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." Freeman v. State, 347 N.J. Super. 11, 32 (App. Div. 2002) (quoting Villalobos v. Fava, 342 N.J. Super. 38, 52 (App. Div. 2001)). "Plaintiffs have a duty to diligently pursue their claims." Id. at 31-32.

It is undisputed the statute of limitations on plaintiff's UIM claim against defendant expired on July 16, 2023. Plaintiff's October 30, 2023 complaint, therefore, was time-barred unless defendant was equitably estopped from relying on the statute of limitations.

Our review of the record reveals no basis on which to apply equitable estoppel. In support of his contrary argument, plaintiff relies primarily on the

holding in Price v. New Jersey Manufacturers Insurance Company, 182 N.J. 519 (2005). There, prior to expiration of the applicable limitations period, an insured's counsel wrote to the insurer requesting it "establish an uninsured motorists claim file" for the insured. Id. at 522. For nearly four years, the parties exchanged information about the insured's claim and the insured submitted to a medical examination at the request of the insurer. Id. at 522-23. During the four-year period, the limitations period in the policy for filing plaintiff's claim expired. Id. at 523. The parties exchanged at least twenty-two communications, including sixteen before the statute of limitations expired. Id. at 522-24.

After expiration of the limitations period, the insured filed a complaint seeking to compel arbitration of his claim. Id. at 523. The insurer asserted it could not be compelled to arbitrate the insured's claim because of the late filing of the complaint. Ibid.

The trial court found the insurer's course of conduct lulled the insured's counsel into a false sense of having filed a timely claim and, as a result, equitably estopped the insurer from avoiding arbitration. Ibid. On appeal, we affirmed, with one judge dissenting, holding the insurer was equitably estopped from raising the timeliness of the insured's complaint because it failed to notify his counsel of its intent to rely on the limitations provision. Id. at 523-24.

14

The Supreme Court affirmed. Id. at 521. The Court held equitable principles and the covenant of good faith and fair dealing inherent in every insurance contract, see Sears Mortg. Corp. v. Rose, 134 N.J. 326, 347 (1993), required the insurer to act in a fair manner and notify the insured of the need to file a request for arbitration by a certain date, Price, 182 N.J. at 526. The Court held:

> It was not reasonable for [the insurer] to sit back, request and receive various documents over a three[-]and[-]one-half[-]year period, and then deny plaintiff's claim because he failed to file a complaint in Superior Court or request arbitration prior to the running of the six-year statute of limitations. We agree with the Appellate Division majority that [the insurer] had a duty of good faith to notify plaintiff if it disagreed with his understanding that [it] was duly acting upon his filed claim.
>
> [Ibid.]

The Court noted that "nine days before the expiration of the statute of limitations" the insurer "asked for the complete workers' compensation file, plaintiff's employer's 'policy language regarding their [coverage] limits and exposure to his loss,' and the original MRI films." Id. at 525-26.

Here, although plaintiff asserts the parties were engaged in ongoing negotiations from May 25, 2021 to October 30, 2023, he produced evidence of only one communication – the April 20, 2022 email – between his counsel's

15

office and defendant during that time. Plaintiff produced no evidence of a settlement demand from plaintiff, a settlement offer from defendant, or an ongoing dialogue between the parties regarding plaintiff's UIM claim. Plaintiff produced no evidence Kacmarcik worked at all on plaintiff's file after April 20, 2022 – no timesheet, written note, memorandum, phone call log, calendar entry, or certification of another employee to whom Kacmarcik spoke about the file. Apparently, plaintiff argues Kacmarcik was engaged in ongoing negotiations with defendant using her personal email account without being supervised by an attorney, copying any other person at counsel's office on her communications, speaking about the file to anyone at the office, or memorializing her work in any fashion.[3]

According to plaintiff, Kacmarcik was the only person from his counsel's office exchanging written negotiations with defendant. However, Kacmarcik died on December 19, 2022, six months before the statute of limitations on plaintiff's UIM claim expired. Plaintiff does not explain how it could be possible for defendant to have lulled plaintiff into not filing a complaint from December 19, 2022 to October 30, 2023, when the only person with whom defendant was

---

[3] Plaintiff's claim that no attorney at his counsel's office was apprised of the negotiations with defendant is contradicted by evidence Goldstein was copied on the April 20, 2022 email at what appears to be his work email address.

16

exchanging written communications regarding plaintiff's UIM claim was deceased. Undoubtedly, negotiations were not ongoing once Kacmarcik died.

In addition, as found by the motion court, plaintiff produced no evidence his counsel took any steps to determine the status of negotiations on plaintiff's UIM claim after Kacmarcik died. The record contains no evidence plaintiff's counsel contacted defendant to report the news of Kacmarcik's death, inquire about the state of negotiations on plaintiff's UIM claim, and provide a new contact for future communications. Given that Goldstein was copied on the April 20, 2022 email, he would have been aware of the email address Kacmarcik used to contact "Carol" to produce documents related to plaintiff's claim. He could have reached out to that contact.

We are not persuaded by plaintiff's claim the motion court should have permitted discovery of defendant's records for any communications defendant had with Kacmarcik about plaintiff's UIM claim. Plaintiff could not reasonably have relied on any communications sent to Kacmarcik after the April 20, 2022 email but before her death because, as plaintiff's counsel appears to concede, Kacmarcik was not sharing those communications with any attorney at the office and was not keeping counsel or plaintiff apprised of the negotiations. Goldstein's opposition to defendant's motion was premised on his claim he was

17

not in possession of any communication between Kacmarcik and defendant regarding plaintiff's UIM claim. Plaintiff did not certify he was aware of the substance of Kacmarcik's supposed negotiations with defendant.

In addition, once Kacmarcik died, it was not reasonable for plaintiff to refrain from filing a complaint based on a belief that ongoing negotiations would resolve his UIM claim. Plaintiff could not have relied on any communication defendant sent to Kacmarcik after her death, as those communications, according to plaintiff's counsel, are stored in an email account to which he does not have access. Plaintiff, therefore, could not have been aware of any such communications, let alone relied on those communications to refrain from filing his complaint for ten months after Kacmarcik's death.

Plaintiff produced no proof defendant's conduct caused him to refrain from filing a timely complaint. Equitable relief was not warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-4036-23