Stephen SIMONE, Jr., Vincent Simone, Michael Simone, Stephen R. Simone, Sr., and Lisa M. Simone, Plaintiffs,

v.

Robert NARDUCCI and Borough of Bellmawr, Defendants.

Civil Action No. 01–3535 (JBS).

United States District Court, D. New Jersey.

May 7, 2003.

■■■■■■■

Frances A. Hartman, Attorneys Hartman, Chartered, Moorestown, NJ, for Stephen Simone, Jr., Vincent Simone, Michael Simone, Stephen R. Simone, Sr., and Lisa M. Simone.

Michael O. Kassak, White and Williams, LLP, Westmont, NJ, for Robert Narducci and Borough of Bellmawr.

Gilbert Brooks, Wolf, Block, Schorr and Solis–Cohen, LLP, Cherry Hill, NJ, for Robert Narducci.

## OPINION

SIMANDLE, District Judge.

The present matter involves a dispute between a police officer's family, the Narduccis, and their neighbors, the Simones—a family who had four boys under the age of 9. Ongoing problems between the two families simmered until a day in July 1999 when three of the Simone boys threw rocks and dirt into the Narduccis' swimming pool. In response, Mr. Narducci, who happened to be an officer of the Borough of Bellmawr's Police Department, decided to detain 9–year–old Stephen Simone, taking him to the police station's jail cell. The situation deteriorated from that point. The actions of the Narduccis and the Simones from that day forward form the basis of this lawsuit.

The present motion for partial summary judgment involves the dispute over the date of the swimming pool incident. Defendants argue that there is no question of fact that it occurred on July 23, 1999, and that the adult plaintiffs' claims in the July 25, 2001 Complaint are therefore barred by the two-year statute of limitations. Plaintiffs, however, argue that the incident occurred on July 28, 1999, and that the adult plaintiffs' claims were timely filed. The present motion does not address the children plaintiffs' claims, since their statute of limitations does not commence to run until age 18.

## I. BACKGROUND

### A. Neighborhood Dispute

In July 1999, plaintiffs Lisa Simone and Stephen Simone, Sr. lived in Bellmawr, New Jersey with their four children, Stephen, Jr., age 9, Vincent, age 8, Michael, age 7, and Justin, age 3. (Complaint ¶¶ 1, 6; Hartman Cert., Ex. B, L. Simone Dep. at 23:21–23:4.) They lived next to defendant Robert Narducci and his wife, Susan Narducci. (Id. ¶¶ 2, 7.) Narducci was a police officer with the Bellmawr Police Department. (Id. ¶ 18.)

On a day in July 1999, the three oldest Simone children, plaintiffs Stephen Jr., Vincent, and Michael, were playing in their yard, throwing rocks and dirt at each other. (Defs.' Statement of Facts ¶ 5; Pls.' Statement of Facts ¶ 5.) Some landed in the Narducci's swimming pool. (Id.) Defendant Officer Narducci apparently went to the Simones' house and confronted Lisa Simone about his pool, and then, without Lisa's knowledge or permission, took Stephen Jr. to the police station and placed him in a jail cell to "teach him a lesson." (Complaint ¶¶ 9–12.) Officer Narducci then apparently contacted Lisa Simone and told her that she needed to bring Vincent and Michael to the station. (Id. ¶ 14.) He allegedly placed Vincent in the cell with Stephen Jr., separated Michael from his mother, and allegedly "verbally harassed and abused" the children "to punish and frighten them," at the police station. (Id. ¶ 15.) From that day forward, plaintiffs say Narducci harassed and intimidated them and kept them under constant surveillance until they finally moved from Bellmawr. (Id. ¶ 50.) It has

developed, as counsel have noted, that in fact the Narducci family moved away months before the Simone family moved.

On July 25, 2001, plaintiffs filed their Complaint with this Court alleging deprivation of civil rights, intentional infliction of emotional distress, and negligent infliction of emotional distress.[1]

### B. *Dispute Over Date*

At issue in this motion is the date of the swimming pool incident. Defendants argue that it occurred on Friday, July 23, 1999; plaintiffs insist it occurred on Wednesday, July 28, 1999.

#### 1. Friday, July 23, 1999

Defendants have pointed to police documents, court documents, a doctor's report, and personal testimony to support their assertion that the event occurred on July 23, 1999. Neither side has requested further opportunity to present testimony on the issue of dates.

First, the police documents that relate to the event include an incident date of July 23, 1999. Three Bellmawr Police Department Arrest Reports, one for each of the three Simone boys, were created on July 24, 1999 and state that the "arrest date" was July 23, 1999. (Hartman Cert., Ex. G.) The daily log report for July 23, 1999, which lists the "sequence of calls [received by the police station] by number and date and time," includes a call about the Narducci/Simone "criminal mischief" incident. (Defs.' Ex. D.) It also includes a call that was made by the Spenos, another neighboring family who also complained about the Simone children's behavior since their pool was also damaged by the dirt and rocks thrown by the Simones. (*Id.;*

Defs.' Ex. C, Walsh Dep. at 33:2–34:20.) The Bellmawr Chief of Police testified that the date of the call in the daily log report reflects the date the call was received by the dispatcher since each call is given a sequential number when it comes in. (*Id.* at 33:7–24.) If the dispatcher, or anyone else, were to try to input a call out of sequence, the log would reflect what happened because, "[i]f a dispatcher went to try to insert something out of sequence say it was July 28th, 1999 and he said you know what, this happened on the 23rd ... and he tried to go back and insert it ... [i]t wouldn't take it because ... [i]t would be three days difference worth of numbers. It would be in the wrong number sequence." (*Id.* at 34:12–20.)

Both the Bellmawr Police Department Incident Report for the Narducci/Simone incident and the Incident Report for the related Speno/Simone incident identify the "incident date" as July 23, 1999. (Defs.' Ex. B; Hartman Cert., Ex. G.) However, the Narducci report identifies "today's date" as July 24, 1999 and the "report date" as July 19, 1999, (Defs.' Ex. B), and the Speno report identifies "today's date" and the "report date" as July 20, 1999, (Hartman Cert., Ex. G). Chief William Walsh of the Bellmawr Police Department testified that the July 23, 1999 "incident dates" are the reliable dates on the documents because:

> The report date here and today's date up here it takes from the computer's internal clock and calendar. So if somebody reset the computer system and some reason changed the date or the date was changed accidentally, it would reflect that on the report when it print-

---

1.  Plaintiffs Lisa Simone and Stephen Simone, Sr. concede that the state law claims—intentional infliction of emotional distress, Count VIII, and negligent infliction of emotional distress, Count IX—are barred by the injury threshold of the New Jersey Tort Claims Act. (Pls.' Br. at 12.) The Court will reflect this voluntary dismissal in the Order that accompanies this Opinion.

ed it out, but it didn't change the incident date that was put in by the officer. That was manually put in by the officer. (Defs.' Ex. C, Walsh Dep. at 28:11–22.) Chief Walsh admits that an officer could later change the incident date on the report, but says that the original master copy in the police file would still have the original date because the master copy cannot be changed without authorization from the police chief. (*Id.* at 29:7–30:9.) He says that since both reports include July 23, 1999 as the incident date, the different dates in the computer-generated date positions just show that the "internal clock probably was off on that computer." (*Id.* at 30:10–31:4.) Clearly the computer's time-clock date was the incorrect date, as no party asserts that these events happened on July 20.

Second, defendants present court documents which show a July 23, 1999 incident date. On July 28, 1999, Narducci's wife, Susan, filed three Juvenile Delinquency Complaints in New Jersey Superior Court, Camden County, one for each of the three Simone boys, and alleged that the swimming pool incident occurred "on or about 7/23/99 at 4:45 p.m." (Defs.' Ex. H; Hartman Cert., Ex. D.) Also included in the record are summonses which alert the Simones to charges of "caus[ing] damage and destruction to the victim's residence and property" on July 23, 1999, (*id.,* Ex. E), and the hearing transcript from the juvenile delinquency proceeding in New Jersey Superior Court where Hearing Officer Hiram A. Soto stated that "[a]ll three juveniles are charged with criminal mischief, for an incident that occurred on July 23, 1999 … specifically [for] throwing rocks and clay into the victim/complainant's swimming pool," (*id.,* Ex. B at Ex. 2 at 3:12–22).

Third, defendants submit the report of Dr. Elliot Atkins, a psychologist that defendant Narducci's wife, Susan, visited after the swimming pool incident. (Brooks Cert. ¶ 7.) Defendants have offered a redacted copy of Dr. Atkins' notes from his July 27, 1999 appointment with Susan Narducci "re: children next door demolishing her house."[2] (Brooks Cert., Ex. A.) The notes show that Susan Narducci stated during the July 27, 1999 appointment that "last week they shoveled the dirt from (the digging of their pool) onto our yard." (*Id.*) She said that she told her husband that "I can't take it any more—the stress of worrying about what they're going to do next," and that she has "had a headache since Fri." (*Id.*) She said that she loves her house, but "feel[s] trapped [and] afraid to leave the house alone. They've damaged my pool." (*Id.*) This record was made on July 27, 1999, and its reference to "Fri." would be to July 23, 1999.

Finally, defendants offer the deposition testimony of defendant Narducci and of Susan Narducci. Defendant Narducci testified that he remembers that the incident occurred on a Friday because he talked to his wife about it over the weekend. (Defs.' Ex. F, R. Narducci Dep. at 247:3–12.) Susan Narducci testified that she remembers it occurred on Friday, July 23, 1999 because she remembers that her daughter was at a sleepover birthday party that

---

**2.** At oral argument, counsel for plaintiffs was given the opportunity to view an unredacted copy of Dr. Atkins' notes solely for the purpose of determining whether any objection needed to be made to its admission. Plaintiffs' counsel accepted that the document is what it purports to be and is relevant to the issue presently before this Court, and that it

was properly redacted to reveal all statements relevant to this dispute about dates. Therefore, this Court will consider the July 27, 1999 doctor's report as admissible evidence relevant to whether the swimming pool incident occurred on July 23, 1999 or July 28, 1999.

night. (Defs.' Ex. G, S. Narducci Dep. at 57:13–58:11.)

### 2. Wednesday, July 28, 1999

Plaintiffs Lisa Simone and Stephen Simone, Sr. point to their court filings and their testimony to support their assertion that the incident occurred on Wednesday, July 28, 1999.

First, their court filings indicate the July 28th date. Lisa Simone filed a complaint against defendant Narducci on August 4, 1999 in which she stated that the "date of offense" when he "kidnapped my son" was July 28, 1999. (Hartman Cert., Ex. F.) Also included in the record is the summons for defendant Narducci to appear which includes the July 28th date, (*id.*, Ex. E), and the record from the December 15, 1999 juvenile delinquency hearing where the Simones were involved in the following exchange:

> Mr. Simone: You know, I never heard anything like it.
>
> Ms. Simone: They're seven, eight, and nine. I mean, really at the time of the incident. And it was on the 28th ...
>
> Ms. Simone: It wasn't even on the 23rd.
>
> Hearing Officer:—you have to answer my question; whether or not you want to have a trial or whether you want them to admit to the charges. You've already admitted that they were the ones—
>
> Mr. Simone: They threw the mud....
>
> Ms. Simone:—oh, they did that ...

(*Id.*, Ex. B at 14:1–25).

Plaintiffs also present their testimony and the testimony of Lisa's father to support their argument that the incident occurred on July 28, 1999. Lisa testified that "my father usually comes every Wednesday to stay with us. He stays from Wednesday to Saturday, and he was—he came that day." (Hartman Cert., Ex. B, L. Simone Dep. at 37:8–11.) Stephen Simone, Sr. agrees, stating that "my father-in-law usually, used to come to our house on Wednesday, stayed Thursday, Friday, and leave Saturday afternoon. And he is very regimented." (*Id.*, Ex. C, S. Simone, Sr. Dep. at 56:8–12.) Lisa's father, Vincent Mallace, testified that he is "a creature of habit. Wednesday to Saturday. That's exactly how long I stayed." (*Id.*, Ex. A, Mallace Dep. at 11:21–23.)

Lisa and Stephen Simone also remember that their pool liner was installed when the incident occurred because Lisa remembers worrying about whether the fan used to install the liner was damaged by the boys, (*id.*, Ex. B, L. Simone Dep. at 38:12–43:14), and because Stephen, Sr. knows that he needed to clean the pool liner because the boys had dirtied it when they were throwing the dirt, (*id.*, Ex. C, S. Simone, Sr. Dep. at 56:18–24). The Simones think that the pool liner was installed on July 28, 1999 because they found a check to the pool company dated July 28, 1999. (*Id.* at 56:18–24; *Id.*, Ex. B., L. Simone Dep. at 38:12–43:7.)

## II. DISCUSSION

On this motion for partial summary judgment, defendants argue that there is no material question of fact on this record that the pool incident occurred on July 23, 1999, and that claims in plaintiffs' July 25, 2001 complaint based on the incident are thus barred by the two-year statute of limitations applicable to this case. Plaintiffs argue that there is a question of fact about the date because they believe it occurred on July 28, 1999 and have consistently stated this belief since August 1999. The Court has considered the record and the arguments of the parties and, for the reasons stated below, finds that no reasonable jury could find that the pool incident occurred after July 25, 1999, the pivotal date for statute of limitations purposes.

## A. *Standard of Review*

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the applicable rule of law. *Id.*

When, as here, defendants move for summary judgment upon an affirmative defense, the Third Circuit has recently observed "that they [have] the burden of supporting their motions 'with credible evidence ... that would entitle [them] to a directed verdict if not controverted at trial.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)." *In re Andrew E. Bressman*, 327 F.3d 229, 237 (3d Cir. 2003). Thus, a movant having the burden of proof at trial must show affirmatively the absence of a genuine issue of material fact, by showing that on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991), *quoted in Bressman*, 327 F.3d at 238. Then, "[o]nce a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judg-ment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *Bressman*, 327 F.3d at 238.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.[3]

This standard is not so exacting that summary judgment must be denied whenever there is an inference contrary to the movant's evidence. A contrary inference that raises only a "metaphysical" dispute will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Even a party's sincere belief that an event occurred on a particular date, when confronted by strong, contemporaneous documentation to the contrary, may not suffice to create a genuine issue of fact. A dispute of fact may be said to be "genuine" only if the evidence favoring the motion's

---

**3.** The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately has the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The non-moving party "may not rest upon the mere allegations or denials of" its pleading and must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue. Fed. R.Civ.P. 56(e); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

opponent would be sufficient, at trial, to successfully resist a motion for a directed verdict on the claim or defense. *Bressman*, 327 F.3d at 237–38. The evidence offered by plaintiffs in opposing this summary judgment motion must be sufficiently "probative" to demonstrate the existence of a triable issue. Upon a careful review of the evidence proffered by the movants and by the plaintiffs in opposition, the Court finds, for reasons stated below, that the movants have presented "substantial corroborating evidence" for each essential element of their statute of limitations defense, *see Bressman*, 327 F.3d at 238, and that the plaintiffs' evidence, based solely on recollection and uncorroborated by objective evidence, is not sufficiently "probative" to present a triable issue.

## B. *Analysis*

Defendants seek partial summary judgment, arguing that the claims of the adult plaintiffs, Lisa Simone and Stephen Simone, Sr., in the July 25, 2001 Complaint are barred by the statute of limitations because they are based on the July 23, 1999 swimming pool incident. Plaintiffs argue that there remains a question of fact about the timeliness of the claims because (1) the statute of limitations did not run until they visited a lawyer after July 28, 1999, who told them that Narducci's actions were unlawful; and (2) regardless, the statute of limitations did not run until July 28, 1999 because the pool incident occurred on the 28th.

### 1. Statute of limitations period

The statute of limitations that applies to a section 1983 actions, including the present action, is that which applies to personal injury actions in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Section 1983 claims brought in New Jersey are thus subject to N.J.S.A. 2A:14–2's two-year statute of limitations for personal injury actions. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir.1989). The statute of limitations begins to run when the plaintiff knows or should reasonably know of the injury that forms the basis of his action. *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982); *Rolax v. Whitman*, 175 F.Supp.2d 720, 727 (D.N.J. 2001).

Here, plaintiffs argue that they did not know Narducci's actions were unlawful until they visited an attorney after July 28, 1999, so they did not know they suffered injury until then and the statute of limitations did not begin to run until then. However, it is clear that "[w]here a claimant is aware that harm has been done him, ignorance of his legal rights does not toll the statute of limitations" because he is "armed with the facts" and "can protect himself by seeking advice." *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Freeman v. State of New Jersey*, 347 N.J.Super. 11, 22, 788 A.2d 867 (App.Div.2002). As a result, in cases of false arrest, the statute of limitations is presumed to begin at the time of the arrest because "the plaintiff will [then] be aware both of his injury, i.e., the wrongful arrest, and of those responsible for that injury, i.e., the police." *Rolax*, 175 F.Supp.2d at 727; *see also Freeman*, 347 N.J.Super. at 22, 788 A.2d 867.

Here, on the date of the swimming pool incident, the Simones were aware that Narducci took Stephen Jr. to the police station and then asked Lisa to bring Vincent and Michael to the station as well. They also knew that Stephen Jr. and Vincent were placed in a cell and that Michael was separated from his mother while at the station. Even if the Simones were unaware of their legal rights, they had sufficient knowledge on the day of the swimming pool incident of what happened to them and of the persons involved for the

statute of limitations to begin to run on their cause of action.[4]

Therefore, because the Simones filed their complaint with this Court on July 25, 2001, and because the statute of limitations began to accrue on their claims the day of the swimming pool incident, plaintiffs' claims are only timely if the pool incident occurred within two years of July 25, 2001. The Court will next determine whether there remains any question of fact regarding defendants' claim that the swimming pool incident occurred on July 23, 2001. If there is no question of fact, then any claims about the swimming pool incident would be time-barred.

### 2. Date of swimming pool incident

Plaintiffs argue that their July 25, 2001 claims based on the swimming pool incident are timely because the swimming pool incident did not occur until July 28, 1999. Defendants, however, argue that there is no question of fact that the incident occurred on July 23, 1999. The record here includes some evidence that supports the July 23rd date and some that supports the July 28th date. The issue here is whether the evidence that supports the July 28th date raises a genuine issue about the date of the pool incident.

Summary judgment may be granted if the movants show that there is no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See Boyle v. County of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir.1998). A factual issue is "material" if it might affect the outcome of the suit under the governing law and is "genuine" if a "reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505). While all facts and references

must be construed in the light most favorable to the nonmoving party on a motion for summary judgment, the "mere existence of a scintilla of evidence in support of the nonmovant's position" will not show that a reasonable jury could reasonably find for the nonmovant. *Boyle*, 139 F.3d at 393 (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Instead, once the moving party satisfies its initial burden of showing that no genuine issue of material fact exists, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Boyle*, 139 F.3d at 393 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). If there is not sufficient evidence for a jury to return a verdict in favor of the non-moving party because the "evidence is merely colorable or not significantly probative," or "where the record as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment in favor of the moving party should be granted because there is "no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Boyle*, 139 F.3d at 393; *see also Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999).

Here, the evidence presented in support of the July 28th date is not sufficiently probative to create a genuine issue as it only adds metaphysical doubt to the record which, when viewed as a whole, shows clear, objective, unbiased evidence that supports the July 23, 1999 date. This Court finds that no rational juror could discount the objective evidence supporting July 23rd based on plaintiffs' assertions that the event occurred on July 28th.

Plaintiffs have long believed that July 28th was the date of the swimming pool

---

4. The Court notes that plaintiffs did seek legal counsel soon after the pool incident. This is not the case where plaintiffs were unaware of their legal rights until after the statute of limitations had already run.

incident; they have presented their August 4, 1999 disorderly conduct charge in which Lisa Simone indicated a July 28, 1999 offense date and the December 15, 1999 juvenile delinquency hearing transcript which shows that Lisa Simone then felt that "it was on the 28th . . . It wasn't even on the 23rd." (Hartman Cert., Ex. F; *Id.*, Ex. B at 14:1–25.) However, Lisa Simone testified at her deposition about how she initially decided that the incident occurred on July 28th:

Q: And the Bellmawr Police records appear to indicate that it occurred on July 23rd. Why do you believe it occurred on July 28th? . . . It sounds as though from your testimony that you're trying to piece it together based upon the date based on certain circumstances as to when your father occurred and all of that; correct?

A: Right.

Q: When was it after the incident that you first tried to recollect when it occurred?

A: When I went down to the police station and we had to do—I had to fill in the date of the incident, and I sat for a moment, and that's the date I came up with.

Q: Was the date you came up with based on your recollection of when your father usually comes?

A: Not just on that.

Q: What else?

A: I knew it was on the 28th, but that just, you know—having my father come on Wednesdays and the fact that they dropped the pool liner that day, as well.

(Hartman Cert., Ex. B at 37:1–38:15.) The two stated reasons, however, do not provide probative value to plaintiffs' assertion that July 28th was the date. First, while plaintiffs think the incident must have occurred on July 28, 1999 because the 28th was a Wednesday and Lisa Simone's father, Vincent Mallace, always visited on Wednesdays, plaintiffs acknowledge that Mr. Mallace always stayed at their house from Wednesday through Saturday. (Hartman Cert., Ex. A, Mallace Dep. at 11:21–23; *Id.*, Ex. B, L. Simone Dep. at 37:8–11; *Id.*, Ex. C, S. Simone, Sr. Dep. at 56:8–12.) Mr. Mallace remembers walking to get something from his car when he found out that the Simone boys were throwing mud. (*Id.*, Ex. A, Mallace Dep. at 11:21–23.) Nothing in the record, however, corroborates his assumption that he must have walked to get something from his car on Wednesday after he had just arrived. Indeed, Mr. Mallace testified that he was not moving in his bags for his weekend stay, but was getting something that he had left in the van:

Q: I thought you said you just pulled up.

A: No. I had everything in. I was in the house with my daughter. I needed something in the van, some clothing or something, that I had not brought in. That's when I went out there to get it. . . . So I was already there. It was just a matter of going out to the van and picking things up. They were outside playing, but I was home.

(Hartman Cert., Ex. A, Mallace Dep. at 19:1–13.) Under these facts, it is possible that Mr. Mallace remembered that he had left something in his van on a Wednesday. However, it is just as possible that he remembered to get something from the van on a Friday during his Wednesday–to–Saturday stay at the Simones. His recollection simply does not add probative value to the plaintiffs' July 28, 1999 date because it does not make it more or less likely that the event occurred on Wednesday.

Plaintiffs' second basis for their belief that the incident occurred July 28 is their

memory that the pool liner was installed at the time of the incident. Lisa Simone remembers that she was immediately concerned about whether the fan used to install the liner was damaged because the pool company had left it in her backyard. (Hartman Cert., Ex. B, L. Simone Dep. at 38:12–43:14.) Stephen Simone, Sr. remembers that he needed to clean the pool liner the night of the incident because the boys had dirtied it with their mud-throwing. (Hartman Cert., Ex. C, S. Simone, Sr. Dep. at 56:18–24.) The Simones think the liner was installed on July 28, 1999 because they found a check made payable to the pool company that was dated July 28, 1999. (*Id.*, Ex. B, L. Simone Dep. at 38:12–43:7; *Id.*, Ex. C, S. Simone, Sr. Dep. at 56:18–24.) However, Lisa Simone also testified that she never paid the pool company until they had completed a particular job; in other words, "if they dug the hole, let's say on the 20th, then I would put down [on the check's description line] that they dug the hole on the 20th and then hand them the check." (*Id.*, Ex. B., L. Simone Dep. at 40:8–28.) Based on this testimony, the check, which is not part of the record, does not provide a probative basis for plaintiffs' July 28th assertion. The liner could have been completely installed on the 28th so that the liner was not on the premises prior to the 28th and could not have needed cleaning prior to the 28th. However, it is equally plausible that the pool company began to install the pool liner on July 23rd, left the installation fan in the Simone backyard, and returned on July 28th to finish the job and receive

payment from Lisa Simone. Under these facts, the Simones would have had every reason to be concerned on July 23rd about damage to the installation fan in their backyard and about cleaning the new, partially-installed liner. The recollection about the pool liner, therefore, does not add probative value to plaintiffs' position; it simply does not make it more likely that the incident occurred on July 28th instead of July 23rd.

Therefore, while plaintiffs have long connected the pool incident to Mr. Mallace's visit and to the installation of their pool liner, the connections do not provide probative evidence that the event occurred on July 28, 1999. This is especially so when plaintiffs' evidence is viewed in light of the record as whole because the record includes objective, uncontroverted evidence that the incident occurred on July 23, 1999. It is true that some evidence supporting the July 23rd date was created by defendant Narducci because he was the police officer on the scene and the arresting officer of the Simone boys. He completed the Bellmawr Police Department's incident reports and arrest reports about the incident and indicated on all six forms that the incident occurred on July 23, 1999. These forms alone may not support a finding of summary judgment if they were the only evidence in support of July 23rd; when countered against plaintiffs' assertions, they would simply present the Court with evidence of defendants' assertion that the incident occurred on the 23rd.[5] However, here, the record also includes two docu-

---

5. The Court notes that there is no indication here that either plaintiffs or defendants fabricated their incident date. From the beginning, each seems to have honestly asserted their belief in the respective dates. On July 24, 1999, defendant Narducci recorded the date as July 23rd on the Bellmawr arrest reports and incident reports. On August 4, 1999, plaintiff Lisa Simone recorded the July 28th date on her disorderly conduct charge against defendant Narducci. The timing of their assertions, thus, does not add nor detract credence to either position on this motion; both established their positions at a time when they had no motive to lie and no reason to believe the statute of limitations could be an issue in an eventual lawsuit.

ments created by third parties about the swimming pool incident.

First, the record includes the daily police log created by the dispatcher on July 23, 1999. (Defs.' Ex. D.) Chief Walsh of the Bellmawr Police Department testified that the computer sequences the calls received by the dispatcher in a way that cannot be changed. (Defs.' Ex. C, Walsh Dep. at 33:2–34:20.) The daily log for July 23, 1999 includes two calls about the Simone children—one from the Narduccis and one from the Spenos. (Defs.' Ex. D.) The second uncontroverted document in support of the July 23rd date is Dr. Elliot Atkins' notes from Mrs. Narducci's July 27th appointment. (Brooks Cert., Ex. A.) On July 27th, Mrs. Narducci told Dr. Atkins about the Simone children and about how they "damaged my pool" when "last week they shoveled the dirt from (the digging of their pool) onto our yard." (*Id.*) She also told Dr. Atkins that she had a headache since Friday worrying about "what they're going to do next." (*Id.*) There is simply no reason that a reasonable jury would not decide, based on this evidence, that the pool incident happened before Mrs. Narducci saw her psychologist on July 27th, that it happened "last week" which encompassed Sunday, July 18th through Saturday, July 24th, and that it started her headache on Friday, July 23rd.

The documents in the record created by the Narduccis provide further support to the July 23rd date. On July 28, 1999, Mrs. Narducci filed a juvenile delinquency complaint with the New Jersey Superior Court. (Defs.' Ex. H.) All agree that the swimming pool incident occurred late in the afternoon; there is no reason to believe that Mrs. Narducci would have forgotten the date of the incident or would have back-dated her pleading if the event had actually occurred on the day she filed the pleading. Moreover, there is no reason to believe that Mrs. Narducci could

feasibly have filed a complaint with the court on the 28th about the swimming pool incident if the incident did not occur until late afternoon on the 28th.

Therefore, while this Court recognizes that self-serving testimony may be used to rebut a motion for summary judgment, *see Waldron v. SL Indus., Inc.,* 56 F.3d 491, 501 (3d Cir.1995), and notes that plaintiffs have long held an honest belief that the swimming pool dispute occurred on July 28, 1999, the Court finds that plaintiffs' proofs only raise a metaphysical doubt about the July 23rd date, which is simply not enough to create a genuine issue. When plaintiffs' testimony is viewed alongside the objective evidence in the record that establishes that the incident occurred on July 23, 1999, no rational trier of fact could find for plaintiffs.

### 3. Untimely claims

Having found that there remains no question of fact about the date of the swimming pool incident, this Court must determine which claims must be dismissed as untimely. The claims in Counts I, II, and VII relate solely to the events that occurred the day of the swimming pool incident, and are therefore time-barred to the extent that they assert the claims of plaintiffs Lisa Simone and Stephen Simone, Sr. The claims contained in Counts III and V, which were all asserted against former defendant Richard Dott, Bellmawr Chief of Police, were voluntarily dismissed on July 1, 2002. [Docket Item 18–1.]

The only claims of plaintiffs Lisa Simone and Stephen Simone, Sr. that partially survive this summary judgment motion are those in Counts IV and VI; the Court will deny summary judgment as to the claims in Counts IV and VI, but *only* to the extent that they are based on Narducci's actions after July 25, 1999. The claims in Count IV relate to defendant Narducci's

alleged harassment and surveillance of the Simones after the pool incident and the claims in Count VI relate to defendant Borough of Bellmawr's failure to supervise and train its officers.[6] The Court will grant summary judgment in part on the claims in Count IV to the extent that it alleges Narducci harassed the Simones before July 25, 1999 and will grant summary judgment in part on the claims in Count VI to the extent that it alleges the Borough of Bellmawr's failure to supervise led to Narducci's actions prior to July 25, 1999.

### III. CONCLUSION

For the reasons stated herein, this Court will grant in part defendants' motion for partial summary judgment as to the claims regarding events prior to July 25, 1999 and will deny in part defendants' motion for partial summary judgment as to the claims regarding events after July 25, 1999.

### ORDER

This matter having come before the Court upon the motion of defendants Robert Narducci and Borough of Bellmawr for partial summary judgment on the claims of plaintiffs Lisa Simone and Stephen Simone, Sr. contained in the complaint of plaintiffs Lisa Simone, Stephen Simone, Sr., Stephen Simone, Jr., Vincent Simone, and Michael Simone, pursuant to Rule 56, Fed., R. Civ. P. [Docket Item 22–1]; and the Court having considered the parties' written submissions as well as oral arguments made on April 24, 2003; and for the

---

**6.** The Court heard oral argument on April 24, 1999 about whether Count VI alleges only that the Borough's failure to supervise led to the events at the police station on the day of the swimming pool incident or alleges that the Borough's failure to supervise led to the events on the swimming pool day and to the alleged harassment thereafter.

reasons expressed in Opinion of today's date;

**IT IS** this 7th day of May, 2003, hereby

**ORDERED** that Counts VIII and IX of plaintiffs' complaint are voluntarily **DISMISSED IN PART WITH PREJUDICE** as to plaintiffs Lisa Simone and Stephen Simone, Sr.; and

**IT IS FURTHER ORDERED** that the motion of defendants Robert Narducci and Borough of Bellmawr [Docket Item 22–1] be, and hereby is, **GRANTED IN PART** as to:

(1) the claims asserted by plaintiffs Lisa Simone and Stephen Simone, Sr. in Counts I, II, and VII of their complaint;

(2) the claims about defendant Robert Narducci's actions after July 25, 1999 asserted by Lisa Simone and Stephen Simone, Sr. in Count IV of their complaint; and

(3) the claims about defendant Borough of Bellmawr's inadequate training asserted by Lisa Simone and Stephen Simone, Sr. alleging that the training caused defendant Robert Narducci's actions after July 25, 1999;

and **JUDGMENT** be entered in defendants' favor as to these Counts;

**IT IS FURTHER ORDERED** that the motion of defendants Robert Narducci and Borough of Bellmawr [Docket Item 22–1] be, and hereby is, **DENIED IN PART** as to:

Pursuant to the liberal pleading requirements of Rule 8(f), Fed.R.Civ.P., this Court finds that Count VI alleges a failure to supervise that resulted in both the events on the swimming pool incident day and the events thereafter because the Count explicitly incorporates the allegations in paragraphs 49 and 50 about plaintiff Narducci's alleged surveillance.

(1) the claims about defendant Robert Narducci's actions before July 25, 1999 asserted by Lisa Simone and Stephen Simone, Sr. in Count IV of their complaint; and

(2) the claims about defendant Borough of Bellmawr's inadequate training asserted by Lisa Simone and Stephen Simone, Sr. alleging that the training caused defendant Robert Narducci's actions before July 25, 1999.